UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| *PRIME STEAKHOUSE*, on behalf of )<br>*itself and all others similarly situated*, )<br> )<br>       *Plaintiff* )<br>*v.* )<br> )<br>*MOWI ASA, et al.*, )<br> )<br>       *Defendants* ) | No. 2:19-cv-00207-JAW |

### *RECOMMENDED DECISION ON MOTION TO TRANSFER VENUE*[1]

Seven defendants in this putative class action lawsuit alleging unlawful coordination of the price of farm-raised salmon move pursuant to 28 U.S.C. § 1404(a) to transfer venue to the United States District Court for the Southern District of Florida ("Southern District of Florida"). *See* Motion of Certain Defendants to Transfer Venue Under 28 U.S.C. § 1404(a) ("Motion to Transfer") (ECF No. 29); Defendants Grieg Seafood BC Ltd., Marine Harvest USA, LLC, Marine Harvest Canada, Inc., and Ducktrap River of Maine LLC's Joinder in Motion to Transfer Venue Under 28 U.S.C. § 1404(a) ("Joinder Motion") (ECF No. 47).[2] The plaintiff requests that the court

---

[1] Pursuant to 28 U.S.C. § 636(b)(1)(A), a magistrate judge may, upon referral of a district judge, "grant non-dispositive motions that do not implicate the federal court's jurisdiction to hear a case." *Salzman v. Travelers Home & Marine Ins. Co.*, 16-CV-04008 (GBD)(SN), 2016 WL 3951206, at *1 (S.D.N.Y. July 20, 2016). If, however, a motion is dispositive, a magistrate judge may only recommend its disposition. *See, e.g., Agincourt Gaming LLC v. Zynga Inc.*, Civil Action No. 11-720-RGA, 2013 WL 3936508, at *2 (D. Del. July 29, 2013). Courts are split as to whether a motion to transfer venue pursuant to 28 U.S.C. 1404(a) is dispositive or non-dispositive. *Compare, e.g., id.* (concluding that "a motion to transfer is not the functional equivalent of an order of dismissal" and, thus, "not a dispositive motion for purposes of § 636(b)(1)" (internal quotation marks omitted)) *with Payton v. Saginaw Cty. Jail*, 743 F. Supp. 2d 691, 693 (E.D. Mich. 2010) (concluding that the grant of a motion to transfer is dispositive because it "is the functional equivalent of a dismissal of the case – albeit without prejudice – in that forum"). Insofar as appears, the First Circuit has not directly addressed the point. *But see Subsalve USA Corp. v. Watson Mfg., Inc.*, 462 F.3d 41, 47-48 (1st Cir. 2006) (holding that an order effecting the transfer of an action pursuant to 28 U.S.C. § 1631 was not immediately reviewable as a final decision of the district court because it did "not terminate the litigation on the merits but, rather, ensure[d] its continuation in a different forum" (footnote omitted)). In an abundance of caution, I have treated the instant motion as dispositive.

[2] Those seven defendants are Lerøy Seafood USA Inc., Ocean Quality USA, Inc., Ocean Quality Premium Brands, Inc., Grieg Seafood BC Ltd., Marine Harvest USA, LLC (now known as Mowi USA, LLC), Marine Harvest Canada,

deny the defendants' motion or, in the alternative, stay action on the motion pending the resolution of any Multidistrict Litigation ("MDL") petition that the defendants may wish to file. *See* Response to Motion of Certain Defendants to Transfer Venue Under 28 U.S.C. § 1404(a) and Motion to Stay ("Response") (ECF No. 39) at 9-10.

Because there is significant overlap between this case and both an earlier and subsequently filed lawsuit in the Southern District of Florida, consideration of other relevant factors favors transfer, and the defendants correctly observe that the filing of an MDL petition is a last resort, I recommend that the court grant the defendants' motion, deny that of the plaintiff, and deem moot the remaining motions pending in this case, ECF Nos. 14, 24, and 26, all of which involve service of process on the defendants, as well as this court's related order to show cause why service has not timely been accomplished on four of the defendants, ECF No. 15.

## I. Applicable Legal Standard

Pursuant to Section 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought[.]" 28 U.S.C.A. § 1404(a). The district court, hence, has "discretion . . . to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Bath Iron Works Corp. v. Congoleum Corp.*, Docket no. 2:18-cv-

---

Inc. (now known as Mowi Canada West, Inc.), and Ducktrap River of Maine LLC (an assumed name of Mowi Ducktrap, LLC). *See* Motion to Transfer at Page ID # 246; Joinder Motion at 1. The plaintiff sued 15 defendants, *see* Class Action Complaint, Jury Trial Demanded ("*Prime Steakhouse* Complaint") (ECF No. 1) ¶ 1, one of which, Bremnes Seashore AS, it voluntarily dismissed without prejudice, *see* ECF No. 19. Five Norwegian defendants, Mowi ASA, Grieg Seafood ASA, Ocean Quality AS, SalMar ASA, and Lerøy Seafood Group ASA, are the subject of a pending motion by the plaintiff for approval of a plan for alternative service, *see* ECF No. 14, and the remaining two defendants, Ocean Quality North America Inc. and Scottish Sea Farms Ltd. (along with defendants Marine Harvest Canada, Inc. and Grieg Seafood BC, Ltd.) are the subject of an order that the plaintiff show cause why service was not timely accomplished upon them, *see* ECF No. 15. Counsel for Scottish Sea Farms Ltd., entered a notice of appearance on December 23, 2019, *see* ECF No. 50, and I have granted Scottish Sea Farms Ltd.'s motion to extend its time to answer the complaint to April 27, 2020, *see* ECF Nos. 52, 54, the same deadline by which the seven defendants seeking transfer must answer the complaint, *see* ECF Nos. 42, 49, 54.

00405-GZS, 2019 WL 2110499, at *1 (D. Me. May 14, 2019) (citations and internal quotation marks omitted). In so doing, courts examine both public and private factors. *See, e.g., Johnson v. VCG Holding Corp.*, 767 F. Supp. 2d 208, 212 (D. Me. 2011). "Public factors encompass the statutory consideration of the interest of justice, focus on judicial economy and often include the district court's familiarity with the governing law, the local interest in deciding local controversies at home, and the relative congestion of the courts." *Id.* (citation and internal quotation marks omitted). "Private factors include the statutory considerations of convenience of the parties and witnesses, . . . plaintiffs['] forum preference, where the claim arose, and the relative ease of access to sources of proof." *Id.* (citation and internal quotation marks omitted). Courts also consider "the possibility of consolidation" and "the order in which the district court obtained jurisdiction[,]" *Bath Iron Works*, 2019 WL 2110499, at *1 (citation and internal quotation marks omitted), implicating the degree to which transfer would serve public interests.

The moving party bears the burden of establishing that an action should be transferred, and "there is a strong presumption in favor of the plaintiff's choice of forum." *Enercon v. Flextronics Int'l USA Inc.*, Docket no. 2:18-cv-00258-GZS, 2018 WL 6729774, at *2 (D. Me. Dec. 21, 2018) (citation and internal quotation marks omitted). However, that presumption is overcome when, for example, the district chosen by the plaintiff is not the plaintiff's home forum, *see, e.g.*, *Ahmed v. Mohammad*, Civil No. 08-257-P-H, 2008 WL 4457866, at *1 (D. Me. Oct. 1, 2008), or the plaintiff brings suit on behalf of itself and a "nationwide class," *Johnson*, 767 F. Supp. 2d at 213 (citations omitted).

## II. Background

The order in which substantially similar lawsuits have been filed, either as "direct purchaser" suits, filed by and on behalf of direct purchasers of salmon, or "indirect purchaser" suits, filed by and on behalf of indirect purchasers of salmon, is as follows.

### A. Direct Purchaser Suits

On April 23, 2019, Euclid Fish Company ("Euclid Fish"), on behalf of itself and all others similarly situated, filed a putative class action suit in the Southern District of Florida against the same 15 defendants named in the instant suit, alleging that they had engaged in the

> unlawful coordination of the prices charged to direct purchasers of farm-raised salmon and salmon products derived therefrom (such as salmon fillets or smoked salmon) which were sold directly by Defendants . . . between July 1, 2015 and the present in violation of Sections 1 and 3 of the Sherman Act (15 U.S.C. §§ 1, 3).

Class Action Complaint and Demand for Jury Trial ("*Euclid Fish* Complaint") (ECF No. 1), *Euclid Fish Co. v. Mowi ASA*, No. 1:19-cv-21551-CMA (S.D. Fla., filed Apr. 23, 2019), ¶ 1.[3]

On April 29, 2019, Schneider's Fish and Sea Food Corp. ("Schneider's Fish"), on behalf of itself and all others similarly situated, filed a nearly identical putative class action complaint in the Southern District of Florida, alleging that the same 15 defendants had engaged in unlawful coordination of prices charged to direct purchasers of salmon and salmon products. Class Action Complaint and Demand for Jury Trial (ECF No. 1), *Schneider's Fish & Sea Food Corp. v. Mowi ASA*, No. 1:19-cv-21652-CMS (S.D. Fla., filed Apr. 29, 2019).[4]

---

[3] The *Euclid Fish* Complaint describes 10 of the defendants as foreign companies headquartered abroad and the remaining four as domestic companies with their respective principal places of business in Florida, Maine, Texas, and North Carolina. *Euclid Fish* Complaint ¶¶ 10-26.

[4] Through joint stipulation, Joint Stipulation for Substitution of Named Defendant Lerøy Seafood Group ASA (ECF No. 178), *Farm-Raised Salmon* (S.D. Fla., filed Nov. 26, 2019), Lerøy Seafood AS has been substituted for Lerøy Seafood Group ASS, and Lerøy Seafood Group ASA has been voluntarily dismissed, Order (ECF No. 184), *Euclid Fish* (S.D. Fla. Jan. 3, 2020).

By order dated May 10, 2019, the Southern District of Florida consolidated the *Euclid Fish* and *Schneider's Fish* actions into *In re: Farm-Raised Salmon and Salmon Products Litigation* ("*Farm-Raised Salmon*"). Order (ECF No. 27), *Euclid Fish* (S.D. Fla. May 10, 2019); *see also* Order of Recusal (ECF No. 4), *Euclid Fish* (S.D. Fla. Apr. 25, 2019) (assigning the case to Judge Cecilia M. Altonaga).

### B. Indirect Purchaser Suits

On April 25, 2019, Bagels & Baguettes, on behalf of itself and all others similarly situated, filed a putative class action complaint in the Southern District of Florida against the same 15 defendants named in the instant suit, alleging that they had engaged in the

> unlawful coordination of the price of farm-raised salmon and salmon products derived therefrom which were sold by [the defendants] . . . between July 1, 2015 and the present in violation of federal antitrust law and various state antitrust and unfair competition, consumer protection and unfair trade practices, and unjust enrichment laws.

Class Action Complaint, Jury Trial Demanded ("*Bagels & Baguettes* Complaint") (ECF No. 1), *Bagels & Baguettes v. Mowi ASA*, No. 1:19-cv-21579-CMA (S.D. Fla., filed Apr. 25, 2019), ¶ 1. Bagels & Baguettes requested that the court certify a nationwide class of those "that purchased farm-raised salmon and/or products derived therefrom . . . other than directly from Defendants . . . from July 1, 2015 to the present[,]" *id*. ¶ 77 – in other words, a class of indirect purchasers.

On the same day, Bagels & Baguettes' counsel, including Samuel J. Dubbin and Daniel Cohen, also filed a notice that "an action alleging antitrust violations related to those found in the instant action is currently pending before the Honorable Cecilia Maria Altonaga: *Euclid Fish Company v. Mowi ASA, et al.*, No. 1:19-cv-21551-CMA." Notice of Pending, Refiled, Related, or Similar Actions (ECF No. 4), *Bagels & Baguettes* (S.D. Fla., filed Apr. 25, 2019). On May 1, 2019, the *Bagels & Baguettes* action was transferred by Judge James Lawrence King to Judge

5

Altonaga. Order of Transfer (ECF No. 5), *Bagels & Baguettes* (S.D. Fla. May 1, 2019). The following day, Judge Altonaga directed that the parties in both *Farm-Raised Salmon* and *Bagels & Baguettes* "be prepared to discuss consolidation and case management issues." Order (ECF No. 6), *Bagels & Baguettes* (S.D. Fla. May 2, 2019). On May 3, 2019, Bagels & Baguettes, by and through its counsel, including Attorneys Dubbin and Cohen, voluntarily dismissed its action without prejudice. Notice of Voluntary Dismissal Without Prejudice (ECF No. 7), *Bagels & Baguettes* (S.D. Fla., filed May 3, 2019).

On May 9, 2019, Prime Steakhouse, located in Falconer, New York, filed the instant action, which appears identical in all material respects to *Bagels & Baguettes*. *Compare Bagels & Baguettes* Complaint *with Prime Steakhouse* Complaint. Attorney Cohen is among the signatories to the instant complaint. *Prime Steakhouse* Complaint at Page ID # 76. In this case, as in *Bagels & Baguettes*, the plaintiff requests that the court certify a nationwide class of indirect purchasers of farm-raised salmon and/or products derived therefrom. *Id*. ¶ 77.

On May 24, 2019, Wood Mountain Fish LLC ("Wood Mountain") filed a putative class action complaint in the Southern District of Florida against the same 15 defendants named in the instant suit, seeking redress on behalf of itself and 32 proposed classes of plaintiffs grouped by state, territory, or the District of Columbia, "who indirectly purchased Farm-raised salmon and/or products derived therefrom produced by any Defendant . . . during the Class Period." Class Action Complaint and Demand for Jury Trial ("*Wood Mountain* Complaint") (ECF No. 1), *Wood Mountain Fish LLC v. Mowi ASA*, No. 1:19-cv-22128-RS (S.D. Fla., filed May 24, 2019), ¶ 75; *see also id*. ¶ 1 (alleging that, between July 1, 2015, and the present, the defendants violated "the antitrust and consumer protection laws of each state recognizing a right of action for indirect purchasers harmed by anticompetitive conduct" and also seeking relief pursuant to the Clayton

6

and Sherman acts).[5] The case was assigned initially to Judge Ursula Ungaro and then reassigned to Judge Rodney Smith. ECF Nos. 2, 22, *Wood Mountain* (S.D. Fla., dated May 24, 2019, and June 20, 2019, respectively).

On May 30, 2019, Wood Mountain filed a motion to transfer and coordinate its action with *Farm-Raised Salmon*, *see* Notice of Pending, Refiled, Related, or Similar Actions and Motion to Transfer and Coordinate with Related Consolidated Actions (ECF No. 8), *Wood Mountain* (S.D. Fla., filed May 30, 2019). However, Judge Ungaro denied the motion without prejudice on the basis that, whereas *Wood Mountain* was an indirect purchaser suit, *Farm-Raised Salmon* was a direct purchaser suit, "[a]nd Judge Altonaga has not indicated a willingness to accept the transfer." Order (ECF No. 14), *Wood Mountain* (S.D. Fla. June 4, 2019). Since then, the court has appointed an interim class counsel for the proposed indirect purchaser class, approved a plan for alternative service on the Norwegian defendants, and issued an order coordinating the timing of an amended complaint in that case with a ruling on Rule 12(b) motions in *Farm-Raised Salmon*. ECF Nos. 24, 45, 75, *Wood Mountain* (S.D. Fla., dated June 20, 2019, July 11, 2019, and July 26, 2019, respectively).

Finally, as the plaintiff noted in its response to the instant motion to transfer, *see* Response at 1, on October 1, 2019, Hunt-Alpine Club LLC ("Hunt-Alpine"), a restaurant in Portland, Maine, filed a putative class action suit in this court against 14 of the same defendants (all but Bremnes Seashore AS) that is substantially similar to both *Bagels & Baguettes* and the instant suit, *compare generally* Class Action Complaint, Jury Trial Demanded (ECF No. 1) ("*Hunt-Alpine* Complaint"), *Portland Hunt-Alpine Club LLC v. Mowi ASA*, No. 2:19-cv-00446-JAW (D. Me., filed Oct. 1,

---

[5] Wood Mountain voluntarily dismissed without prejudice Bremnes Seashore AS as a defendant in the lawsuit. Notice of Voluntary Dismissal of Defendant Bremnes Seashore (ECF No. 85), *Wood Mountain* (S.D. Fla., filed Aug. 20, 2019).

7

2019) *with Bagels & Baguettes* Complaint; *Prime Steakhouse* Complaint. Attorneys Dubbin and Cohen are among the signatories to the *Hunt-Alpine* complaint. *Hunt-Alpine* Complaint at Page ID # 110.

### III. Discussion

The defendants seek to transfer this case to the Southern District of Florida, emphasizing that (i) an action identical to this one was filed and then voluntarily dismissed after Judge Altonaga was assigned to the case, and (ii) two putative nationwide class action lawsuits remain pending in the Southern District of Florida that are predicated on the same core facts as the instant action and seek similar relief. *See* Motion to Transfer at 2-4. For the reasons that follow, after consideration of the relevant factors, I agree that transfer is warranted in this case.

#### A. Right to Bring Action in Transferee Forum

The parties do not dispute that the plaintiff could have filed this case in the Southern District of Florida, where defendant Marine Harvest USA, LLC, is incorporated and has its primary place of business. *See* Motion to Transfer at 9-10; Response at 3 n.3; *see also Prime Steakhouse* Complaint ¶ 14; 28 U.S.C. § 1332(c)(1) ("a corporation shall be deemed to be a citizen of every State . . . by which it has been incorporated and of the State . . . where it has its principal place of business"). The defendants, thus, satisfy the threshold requirement of Section 1404(a) that the transferee forum be one in which the plaintiff had the right to bring the action at issue.

#### B. Interests to be Weighed

##### 1. Public Factors

As the defendants persuasively argue, *see* Motion to Transfer at 7-9, analysis of the public interests at stake favors the grant of their motion, in particular, the order in which this court obtained jurisdiction and the possibility of consolidation in the Southern District of Florida.

8

There is no dispute that two direct purchaser salmon price-fixing suits, *Euclid Fish* and *Schneider's Fish* (later consolidated as *Farm-Raised Salmon)*, as well as one indirect purchaser suit, *Bagels & Baguettes*, were filed in the Southern District of Florida more than a week prior to the filing of the instant suit. The plaintiff, nonetheless, contends that because Bagels & Baguettes voluntarily dismissed its suit without prejudice, and the instant action was the filed prior to *Wood Mountain*, the instant action is the first-filed indirect purchaser suit. *See* Response at 2, 6-7. Yet, in the totality of the circumstances, as the defendants rejoin, "[t]reating the complaint here as the first filed would magnify the exact risks the [first-filed] rule is designed to avoid: wasted resources because of piecemeal litigation, the possibility of conflicting judgments, and a general concern that the courts may unduly interfere with each other's affairs." Defendant's Reply in Support of their Motion to Transfer Venue Under 28 U.S.C. § 1404(a) ("Reply") (ECF No. 40) at 4 (citation and internal quotation marks omitted).

That both *Farm Raised Salmon*, an earlier filed direct purchaser suit, and *Wood Mountain*, a later filed indirect purchaser suit, remain pending in the Southern District of Florida is of significance here. While Bagels & Baguettes voluntarily dismissed its suit, "concurrent federal cases need not be exactly the same to generate a preference for the first-filed action." *Bath Iron Works*, 2019 WL 2110499, at *3. Instead, analysis focuses on whether permitting concurrent cases to continue "raises concerns about the ills of duplicative litigation." *Id.* (citation and quotation marks omitted).

Such concerns were present in *Bath Iron Works*, in which this court discerned "significant overlap between th[e] case[s]" in this forum and the transferee forum when "both actions require[d] the deciding court to interpret" the same merger agreement, "in the context of the same set of historical corporate transactions, to determine which party [was] liable for the effects of resilient

9

flooring operations conducted on the [same] parcel[.]" *Id*. (footnote omitted). The court determined that, were those cases "to proceed separately, the parties and courts would have to waste resources resolving the same contract issues in two different forums." *Id*. (citations and internal quotation marks omitted). It added that, "because the contract claims in the two actions [we]re so factually intertwined, they raise[d] the specter of conflicting judgments." *Id*. (citations and internal quotation marks omitted).

The same is true here. There is a significant overlap not only between *Bagels & Baguettes* and this suit, but also between *Farm-Raised Salmon* and this suit. Both this suit and *Farm-Raised Salmon* require the resolution of the same underlying factual issue: whether the defendants coordinated the price of farm-raised salmon. Absent a transfer, the "ills of duplicative litigation[,]" *id*. (citation and internal quotation marks omitted), including the waste of resources and the risk of conflicting judgments, would be present.

The plaintiff, nevertheless, contends that this action differs from those in the Southern District of Florida in important ways. *See* Response at 2, 7-8. First, the plaintiff argues that this case is unlikely to be consolidated with *Farm-Raised Salmon*, Judge Altonaga having been unwilling to consolidate an indirect purchaser suit, *Wood Mountain,* with a direct purchaser suit, *Farm-Raised Salmon*. *See id.* at 2.

Yet, even assuming this suit would not be consolidated with *Farm-Raised Salmon*, I perceive no reason why it could not be consolidated with *Wood Mountain*. Even the mere "possibility of consolidation" must be considered "when adjudicating a venue-transfer request in similar or related cases." *Cruz-Acevedo v. Unilever U.S., Inc.*, Civil No. 15-2175 (ADC), 2016 WL 9460633, at *6 (D.P.R. Sept. 26, 2016) (observing that "the Court can and should consider consolidation in its decision to transfer even though the transferee forum would be the one deciding

10

whether to consolidate the cases") (citation and internal quotation marks omitted); *see also, e.g.*, *Bath Iron Works*, 2019 WL 2110499, at *3 (transferring case in part because the court "discern[ed] no reason why the claims in this case could not be consolidated" with pending claim in transferee district).

Second, the plaintiff argues that it "seeks to certify a class that appears to be significantly narrower in scope than the putative class set forth in the Wood Mountain complaint." Response at 7. The plaintiff contends that combining this case with *Wood Mountain*, in which lead counsel already has been appointed for a class that seems to subsume the class the plaintiff seeks to represent, jeopardizes its bid for class certification because "a narrower class has a better chance of being certified than does a much broader one." *Id*. Finally, it complains that, if this action is consolidated with *Wood Mountain*, it will become part of a case led by a fundamentally different type of class representative – a wholesaler of farm-raised salmon whose damages claim may differ meaningfully from that of a restaurant selling farm-raised salmon such as itself. *See id*. at 7-8.

The plaintiff cites no authority for the proposition that such class certification issues weigh against a transfer. On the contrary, the pendency of both direct and indirect purchaser suits in one court seemingly would facilitate the resolution of such class certification issues. *See, e.g.,* 7B Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, *Federal Practice and Procedure* § 1798.1, at 231-32 (3d ed. 2005) (noting the "complicated problems of judicial coordination" posed by "competing and duplicative" class actions; observing that a "single nationwide class action seems to be the best means of achieving judicial economy" and ensuring fairness).

At bottom, despite the differences between this case and *Farm-Raised Salmon*, the possibility of the consolidation of this case with at least one other case pending in the Southern District of Florida, *Wood Mountain*, conserving judicial resources and eliminating the risk of

conflicting judgments, weighs in favor of the transfer of this case to the Southern District of Florida. That is particularly true given that, in contrast to *Wood Mountain*, in which the District of Florida has appointed interim class counsel for the proposed indirect purchaser class, approved a plan for alternative service on the Norwegian defendants, and issued an order coordinating the timing of an amended complaint with Rule 12(b) practice in *Farm-Raised Salmon*, this case remains in its infancy. As noted above, the deadline for eight defendants to answer the complaint has been extended to April 27, 2020, the plaintiff's motion to serve five Norwegian defendants by alternate means is pending, the remaining defendant, along with three others, is the subject of a pending order that the plaintiff show cause for failure to effectuate timely service of the complaint, and no scheduling order has issued.

The relatively minimal effort expended by this court and the parties in this case, combined with the Southern District of Florida's greater familiarity with the parties, facts, and claims, supports transfer of this case to the Southern District of Florida. *See, e.g., Summers-Wood L.P. v. Wolf*, No. 3:08-cv-60/RV/MD, 2008 WL 2229529, at *4 (N.D. Fla. May 23, 2008) (concluding that transfer was in the interests of justice when case was still in its infancy, and the parties had not even begun discovery); *see also, e.g., Kukich v. Electrolux Home Prods., Inc.*, Civil Action No. ELH-16-3412, 2017 WL 345856, at *10 (D. Md. Jan. 24, 2017) ("When a similar case is already pending in another district, transfer of related claims is favored because it may facilitate efficient pretrial proceedings and discovery and also because it avoids inconsistent results. Moreover, there is judicial economy in having the same judge consider the same underlying facts and issues only once[.]" (citations and internal quotation marks omitted)); *Tovar v. Indiana*, Civil No. 2:12-CV-175-DBH, 2012 WL 3263948, at *1-2 (D. Me. Aug. 9, 2012) (transferring case to transferee court that was "familiar with the underlying dispute").

## 2. Private Factors

### a. Presumption in Favor of Plaintiff's Choice of Forum

The defendants argue that, in this case, the strong presumption in favor of a plaintiff's choice of forum is overcome by (i) the plaintiff's "transparent forum shopping," (ii) its status as a New York entity with no alleged relationship to Maine, and (iii) the fact that it brings claims on behalf of a proposed nationwide class, rendering its choice of forum even less relevant. *See* Motion to Transfer at 10. The plaintiff rejoins that this showing fails to carry the defendants' burden of overcoming the strong presumption in favor of its choice of this forum. *See* Response at 4-5. It adds that, in any event, several factors militate in its favor: that (i) there are no clear indicia that it engaged in forum shopping, (ii) it has sued one Maine defendant, Mowi Ducktrap, LLC, and (iii) another Maine plaintiff, Hunt-Alpine, has filed a substantially similar indirect purchaser suit in this forum. *See id.*

The defendants have the better argument. The plaintiff's decision to file in Maine indeed appears to have been a tactical one. However, even apart from whether its choice of this forum was the product of "forum shopping," its lack of relationship with Maine, and the fact that it purports to act on behalf of a nationwide class, in themselves undermine the strong presumption in favor of preserving its choice of this forum. *See, e.g.*, *Ahmed*, 2008 WL 4457866, at *1 (presumption overcome when forum was not plaintiff's home forum); *Johnson*, 767 F. Supp. 2d at 213 (presumption overcome when plaintiff brought suit on behalf of itself and a nationwide class). That a Maine plaintiff subsequently chose to bring a nearly identical suit in this forum has no bearing on whether the defendants have overcome the presumption in favor of this plaintiff's choice of forum.

### b. Convenience of Parties and Witnesses

Examination of the convenience of the parties and witnesses supports transfer as well. The plaintiff does not argue that the Southern District of Florida is inconvenient, instead proposing to coordinate the instant action in Maine with the related actions in Florida:

> **Convenience of parties and witnesses:** Counsel for Prime Steakhouse has worked together with counsel for Wood Mountain and counsel for the plaintiff in the direct purchaser action, Euclid Fish Company, in *In re Packaged Seafood Products Antitrust Litig.*, Case No. 15-2670,[6] in which the law firms are lead counsel for different classes. Prime Steakhouse's counsel is willing to coordinate discovery in the pending lawsuits relating to farm-raised salmon price-fixing, so transfer of the Prime Steakhouse action is not required in order to avoid duplicative depositions and discovery. Defendants assert that transferring the Prime Steakhouse to Judge Smith will avoid "any possibility of repeat proceedings." (ECF No. 29 at 9). However, this would only be true of the indirect purchaser actions. The indirect and direct purchaser actions in the Southern District of Florida have not proceeded on the same schedule thus far.

Response at 7. The plaintiff's counsel's offer to coordinate discovery in the related actions does not allay concerns regarding the "ills of duplicative litigation." *Bath Iron Works*, 2019 WL 2110499, at *3 (citation and internal quotation marks omitted). First, coordinated discovery does not address the risk of conflicting judgments. Second, engaging in cross-jurisdictional coordinated discovery could itself lead to complication and inconvenience. Third, in making the above proposal, the plaintiff acknowledges that some form of consolidated discovery is necessary to avoid duplicative and repeat proceedings. This factor, accordingly, weighs in favor of transfer.

### c. Availability of Documents

Turning, finally, to the availability of documents and other evidence, the parties agree that this factor is not determinative. *See* Response at 6; Reply at 6; *see also, e.g.*, *Johnson*, 767 F. Supp. 2d at 216 ("This factor seems like a holdover from a time when businesses kept important

---

[6] I presume that in referring to "*In re Packaged Seafood Products Antitrust Litig.*, Case No. 15-2670," the plaintiff meant to refer to *Farm-Raised Salmon*.

records . . . in paper and the difficulty of physically assessing the paper documents and the burden of transporting them across jurisdictions could be onerous.").

In sum, consideration of the totality of the relevant circumstances, including the order in which the actions were filed, the similarity of the instant case to those pending in the Southern District of Florida, that court's familiarity with those cases, the plaintiff's lack of connection to this forum, and the plaintiff's weak showing of prejudice and lack of any showing of inconvenience arising from the transfer, weigh in favor of granting the defendants' motion to transfer this case to the Southern District of Florida.

### C. Judicial Panel on Multidistrict Litigation ("JPML")

The plaintiff seeks the denial of the Motion to Transfer or, in the alternative, a stay pending the resolution of any MDL petition the defendants might wish to file with the Judicial Panel on Multidistrict Litigation ("JPML") pursuant to 28 U.S.C. § 1407. *See* Response at 9-10. The plaintiff argues that such a petition is the only way in which to address the defendants' concerns regarding "the multi-forum nature of the present litigation, which will not be eliminated by transfer of the [instant] action under § 1404." *Id*. at 9. The plaintiff adds that transfer pursuant to the MDL statute would allow it to maintain its choice of trial forum, providing for a right of transfer back to the originating court in the event of trial. *See id*. at 9-10.

Nonetheless, as the defendants correctly note, "[t]he JPML has cautioned that the MDL procedure 'should be the last solution after considered review of all other options.'" Reply at 7 (quoting *In re: Best Buy Co., Inc., Cal. Song-Beverly Credit Card Act Litig.*, 804 F. Supp. 2d 1376, 1378 (J.P.M.L. 2011)); *see also In re: Best Buy*, 804 F. Supp. 3d at 1379 (denying motions for consolidation pursuant to Section 1407 when "the proponents of centralization ha[d] not met their burden of demonstrating the need for centralization, particularly given the availability of Section

15

1404"); *In re: Michaels Stores, Inc., Pin Pad Litig.*, 844 F. Supp. 2d 1368, 1368-69 (J.P.M.L. 2012) (same).

That the plaintiff prefers an MDL approach does not diminish the strength of the defendants' argument that transfer is appropriate pursuant to Section 1404(a).

### IV. Conclusion

For the foregoing reasons, I recommend that the defendants' motion to transfer this action to the United States District Court for the Southern District of Florida be **GRANTED**, the plaintiff's motion for a stay pending the resolution of any MDL petition be **DENIED**, and the three remaining motions pending in this case, ECF Nos. 14, 24, and 26, as well as this court's related order to show cause why service has not timely been accomplished on four of the defendants, ECF No. 15, be **DEEMED MOOT**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 23rd day of January, 2020.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge