## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

PRIME STEAKHOUSE, on behalf of )
itself and all others similarly situated, )
                              )
          Plaintiff, )
    v.                        )      No. 2:19-cv-00207-JAW
                              )
MOWI ASA et al.,               )
                              )
          Defendants. )

## ORDER AFFIRMING RECOMMENDED DECISION ON MOTION TO TRANSER VENUE

Prime Steakhouse, on behalf of itself and all others similarly situated (Prime Steakhouse), objects to the Magistrate Judge's Recommended Decision in which he recommended that the Court grant various defendants' Motion to Transfer Venue under 28 U.S.C. § 1404(a). Because the Court, after conducting a de novo review, agrees with the reasoning of the Magistrate Judge, the Court overrules Prime Steakhouse's objection.

## I.  PROCEDURAL HISTORY

On May 9, 2019, Prime Steakhouse filed a complaint against Mowi ASA, formerly known as Marine Harvest ASA (Mowi ASA); Marine Harvest USA, LLC; Marine Harvest Canada, Inc.; Ducktrap River of Maine LLC; Grieg Seafood ASA; Grieg Seafood BC Ltd.; Bremnes Seashore AS; Ocean Quality AS; Ocean Quality North America Inc.; Ocean Quality USA Inc.; Ocean Quality Premium Brands, Inc.; SalMar ASA; Lerøy Seafood Group ASA; Lerøy Seafood USA Inc.; and Scottish Sea Farms Ltd. *Compl.* (ECF No. 1). On August 7, 2019, Prime Steakhouse filed a motion

for approval of a plan for alternative service on six Norwegian defendants—Mowi ASA, Grieg Seafood ASA, Bremnes Seashore AS, Ocean Quality AS, SalMar ASA, and Lerøy Seafood Group ASA. *Pl. Prime Steakhouse's Mot. for Approval of Plan for Alternative Service of Process on Norwegian Defs.* (ECF No. 14). On August 9, 2019, the Deputy Clerk of Court issued an order to show cause to Prime Steakhouse as to why service had not been timely made as to the defendants Marine Harvest Canada, Inc.; Grieg Seafood BC, Ltd.; Ocean Quality North America, Inc.; and Scottish Sea Farms, Ltd. *Order to Show Cause* (ECF No. 15).

On August 19, 2019, Lerøy Seafood USA Inc., with the consent of Prime Steakhouse, moved for an extension of time to answer the Complaint on behalf of itself and Marine Harvest USA, LLC; Ducktrap River of Maine LLC; Ocean Quality USA Inc.; and Ocean Quality Premium Brands, Inc. (the United States Defendants). *Unopposed Mot. of Def. Lerøy Seafood USA Inc. for Extension of Time for Certain Defs. to File Resp. to Compl.* (ECF No. 17). The Magistrate Judge granted the motion on August 20, 2019. *Order Granting Without Obj. Mot. for Extension of Time to Answer* (ECF No. 18). On August 20, 2019, Prime Steakhouse filed a notice of voluntary dismissal as to Bremnes Seashore AS. *Notice of Voluntary Dismissal of Def. Bremnes Seashore AS* (ECF No. 19). Also on August 20, 2019, Prime Steakhouse responded to the outstanding Order to Show Cause and, in the alternative, sought an extension of its time to complete service of process on the foreign defendants at issue. *Pl. Prime Steakhouse's Resp. to Order to Show Cause (ECF No. 15)* (ECF No. 20); *Mot. to Extend Time* (ECF No. 24).

On August 27, 2019, Lerøy Seafood USA Inc., with the consent of Prime Steakhouse, moved for an extension of time to respond to Prime Steakhouse's Motion for Approval of Plan for Alternative Service of Process on behalf of the United States Defendants. *Unopposed Mot. of Def. Lerøy Seafood USA Inc. for Nine-Day Extension of Time for Certain Defs. to Respond to Pl.'s Mot. (ECF No. 14) for Approval of Plan for Alternative Service of Process* (ECF No. 22). The Magistrate Judge granted the motion on August 28, 2019. *Order Granting Without Obj. Mot. to Extend Time* (ECF No. 23). On September 6, 2019, Lerøy Seafood USA Inc., on behalf of the United States Defendants, moved for a stay of further consideration of Prime Steakhouse's Motion for Approval of a Plan for Alternative Service and responded to Prime Steakhouse's alternative request for an extension of time to effect service. *Combined (1) Mot. of Def. Lerøy Seafood USA Inc. for Itself and the Other United States Defs. for Stay of Further Consideration of Mot. (ECF No. 14) for Approval of Plan for Alternative Service of Process on Norwegian Defs.; and (2) Resp. to ECF No. 14 and ECF No. 20 Request for Extension for Pl.* (ECF No. 25); *Mot. to Stay* (ECF No. 26).

On September 10, 2019, Lerøy Seafood USA Inc.; Ocean Quality USA Inc.; and Ocean Quality Premium Brands, Inc. filed a motion to transfer venue with the support of the remaining United States Defendants. *Mot. of Certain Defs. to Transfer Venue Under 28 U.S.C. § 1404(a)* (ECF No. 29) (*Defs.' Mot.*). On September 11, 2019, Prime Steakhouse responded to the United States Defendants' Motion to Stay.[1] *Pl.*

---

[1] The Clerk docketed the motion to stay at ECF Number 26. *Mot. to Stay* (ECF No. 26). However, in the title of its motion, Prime Steakhouse mistakenly stated the motion to stay was filed at ECF Number 25.

*Prime Steakhouse's Resp. to United States Defs.' Mot. for Stay (ECF No. 25)* (ECF No. 30). On September 16, 2019, Prime Steakhouse filed a reply in support of its Motion for Approval of a Plan for Alternative Service. *Pl. Prime Steakhouse's Reply in Support of Its Mot. for Approval of Plan for Alternative Service of Process on Norwegian Defs. (ECF No. 14)* (ECF No. 31). On September 19, 2019, Lerøy Seafood USA Inc. filed, on behalf of the United States Defendants, a reply in support of its Motion to Stay. *Reply in Support of Mot. (ECF No. 26) of Def. Lerøy Seafood USA Inc. for Itself and the Other United States Defs. for Stay of Further Consideration of Mot. (ECF No. 14) for Approval of Plan for Alternative Service of Process on Norwegian Defs.* (ECF No. 32).

On September 24, 2019, Lerøy Seafood USA Inc.; Ocean Quality USA, Inc.; and Ocean Premium Brands, Inc. filed, on behalf of the United States Defendants, a consented-to motion for an extension of time to answer Prime Steakhouse's Complaint. *Consent Mot. of Defs. Lerøy Seafood USA Inc., Ocean Quality USA, Inc., and Ocean Premium Brands, Inc. for Extension of Time for Certain Defs. to File Resp. to Compl.* (ECF No. 37). The Magistrate Judge granted this motion on September 27, 2019. *Order Granting Without Obj. Mot. for Extension of Time to Answer* (ECF No. 38).

On October 1, 2019, Prime Steakhouse filed a response to the United States Defendants' Motions to Transfer Venue and to Stay. *Resp. to Mot. of Certain Defs. to Transfer Venue Under 28 U.S.C. § 1404(a) and Mot. to Stay* (ECF No. 39) (*Pl.'s Resp.*). The United States Defendants replied on October 15, 2019. *Defs.' Reply in Support*

*of Their Mot. to Transfer Venue Under 28 U.S.C. § 1404(a)* (ECF No. 40) (*Defs.' Reply*).

On October 25, 2019, the United States Defendants filed a consented-to motion for an extension of time to answer Prime Steakhouse's Complaint. *Consent Mot. of Defs. Lerøy Seafood USA Inc., Marine Harvest USA, LLC, Ducktrap River of Maine LLC, Ocean Quality USA Inc., and Ocean Quality Premium Brands, Inc., for Extension of Time to File Resp. to Compl.* (ECF No. 41). The Magistrate Judge granted this motion on October 28, 2019. *Order Granting Without Obj. Mot. for Extension of Time to Answer* (ECF No. 42).

On November 21, 2019, Defendants Grieg Seafood BC Ltd.; Marine Harvest USA, LLC; Marine Harvest Canada, Inc.; and Ducktrap River of Maine LLC moved to join in the United States Defendants' Motion to Transfer Venue. *Defs. Grieg Seafood BC Ltd., Marine Harvest USA, LLC, Marine Harvest Canada, Inc., and Ducktrap River of Maine LLC's Joinder in Mot. to Transfer Venue Under 28 U.S.C. § 1404(a)* (ECF No. 47). Also on November 21, 2019, Grieg Seafood BC Ltd. and Marine Harvest Canada, Inc. filed a consented-to motion for an extension of time to answer Prime Steakhouse's Complaint. *Defs. Grieg Seafood BC Ltd. and Marine Harvest Canada, Inc.'s Consent Mot. for Extension of Time to Respond to the Compl.* (ECF No. 48). The Magistrate Judge granted this motion on November 26, 2019. *Order Granting Without Obj. Mot. for Extension of Time to Answer* (ECF No. 49). On December 23, 2019, Scottish Sea Farms Ltd. filed a consented-to motion for an extension of time to answer Prime Steakhouse's Complaint. *Scottish Sea Farms Ltd. Consented-to Mot. for Enlargement* (ECF No. 51). The Magistrate Judge granted this

motion that same day. *Order Granting Without Obj. Mot. for Extension of Time to Answer* (ECF No. 52). On January 17, 2020, the United States Defendants; Grieg Seafood BC Ltd.; Marine Harvest Canada, Inc.; and Scottish Sea Farms Ltd. filed a consented-to motion for an extension of time to answer Prime Steakhouse's Complaint. *Consent Mot. of Defs. Lerøy Seafood USA Inc., Marine Harvest USA, LLC, Marine Harvest Canada, Inc., Ducktrap River of Maine LLC, Ocean Quality USA Inc., Ocean Quality Premium Brands, Inc., Grieg Seafood BC Ltd., and Scottish Sea Farms Ltd. for Extension of Time to File Resp. to Compl.* (ECF No. 53). The Magistrate Judge granted this motion on January 21, 2020. *Order Granting Without Obj. Mot. for Extension of Time to Answer* (ECF No. 54). On March 10, 2020, SalMar ASA filed a consented-to motion for an extension of time to answer Prime Steakhouse's Complaint. *SalMar, ASA Consented-to Mot. for Enlargement* (ECF No. 66). The Magistrate Judge granted this motion the next day. *Order Granting Without Obj. Mot. for Extension of Time to Answer* (ECF No. 67).

The Magistrate Judge issued his recommended decision on the United States Defendants' Motion to Transfer Venue on January 23, 2020. *Recommended Decision on Mot. to Transfer Venue* (ECF No. 55) (*RecDec*). Prime Steakhouse objected on February 6, 2020. *Pl.'s Obj. to Recommended Decision on Defs.' Mot. to Transfer* (ECF No. 56) (*Pl.'s Obj.*). On February 20, 2020, the United States Defendants; Grieg Seafood BC Ltd.; and Marine Harvest Canada, Inc. (collectively Defendants) responded to Prime Steakhouse's objection. *Defs.' Resp. to Pl.'s Objs. to the Magistrate Judge's Recommended Decision (ECF No. 55)* (ECF No. 58) (*Defs.' Resp.*).

## II. RECOMMENDED DECISION OF THE MAGISTRATE JUDGE AND PARTIES' POSITIONS

### A. Defendants' Motion to Transfer

The Defendants state that "[t]his case should be transferred to the Southern District of Florida under 28 U.S.C. § 1404(a) to promote judicial efficiency and in the interests of justice to remedy forum shopping." *Defs.' Mot.* at 1. The Defendants represent that this case "is the offshoot of a series of cases already pending in the Southern District of Florida alleging an antitrust conspiracy to fix prices on farm-raised Atlantic salmon," and that "[t]he same lawyers who have commenced this action previously filed, and dismissed, a lawsuit in Florida—a nearly identical complaint against the same Defendants on behalf" of a different plaintiff. *Id.* They allege that Prime Steakhouse "seeks to represent a class of indirect purchasers of farm-raised salmon, which are likely located across the country and, like Prime Steakhouse, have no apparent interest in litigating this case in Maine," and also that the allegations in this case are "indistinguishable from yet another lawsuit that asserts claims (like this case) on behalf of a putative class of indirect purchasers of farm-raised salmon, and is also pending in the Southern District of Florida . . .." *Id.* (citing *Compl.*, *Wood Mountain Fish LLC v. Mowi ASA*, No. 1:19-cv-22128 (S.D. Fla. May 24, 2019), ECF No. 1 (hereafter *Wood Mountain*). The Defendants accuse Prime Steakhouse of engaging in forum shopping. *Id.* at 2. The Defendants present background on the procedural history of this litigation before presenting the legal standard for decision. *Id.* at 2-5. The Defendants then lay out their argument in three parts.

### 1. This Case Could Have Been Brought in the Southern District of Florida

The Defendants argue that this action could have been brought in the Southern District of Florida "because [Prime Steakhouse's] counsel previously filed the same lawsuit in that district, which is tantamount to a concession that this case could have been brought there." *Id.* at 5. The Defendants posit that Prime Steakhouse "may argue this case could not have been brought in the Southern District of Florida because some foreign-based Defendants may contest personal jurisdiction in that forum" but state that this is not relevant because these defendants have not been served yet and will likely make the same arguments about personal jurisdiction whether the case proceeds in Maine or Florida. *Id.* at 6.

### 2. Public Interest Factors Favor Transfer

The Defendants believe the most reasonable inference from Prime Steakhouse's attorney's actions is that they are engaged in forum-shopping, and for that reason, "transfer is in the interest of justice . . .." *Id.* at 7. Additionally, "[t]ransfer will promote judicial economy by consolidating all indirect purchaser cases in the same district," reducing the "drain [on] judicial resources and [the] risk [of] inconsistent rulings . . .." *Id.* at 7-8. The Defendants state that transfer "will preserve judicial resources by concentrating litigation in one district, avoid the logistical challenges inherent in trying to coordinate multi-Defendant class actions across two districts, and prevent inconsistent rulings . . .." *Id.* at 8. Finally, the Defendants assert that "[f]amiliarity with the relevant law is neutral here, because [Prime Steakhouse] seeks relief under the laws of both Florida and Maine." *Id.*

### 3. Remaining Factors Favor Transfer

The Defendants argue that "transfer is far more convenient than having two indirect purchaser cases pending in different forums, because it will avoid duplicative travel and any possibility of repeat proceedings." *Id.* at 9. They also argue that consolidation favors transfer for the same reasons, and that "[t]he order in which this Court obtained jurisdiction similarly favors transfer, because this case was filed only *after* direct purchaser cases and an indirect purchaser case filed by [Prime Steakhouse]'s counsel were initiated in the Southern District of Florida." *Id.* (emphasis in original). Furthermore, the Defendants contend that Prime Steakhouse's choice of forum is not entitled to deference because its attorneys have engaged in forum shopping, it has no relationship to Maine, and its choice of forum is less relevant because it seeks to represent a class "whose members reside throughout the United States . . . ." *Id.* at 10. The Defendants add that "[c]ourts also have considered the location of evidence," but this factor is "afforded little weight today" and "there is no reason that evidence will be more accessible in Maine than in Florida . . . ." *Id.*

### B. Prime Steakhouse's Response

Prime Steakhouse states that transfer "would not serve the interests asserted by the Defendants . . . and would undermine [Prime Steakhouse's] choice of forum." *Pl.'s Resp.* at 1. Prime Steakhouse "notes that . . . a related class action complaint [has been] filed in the District of Maine on behalf of the Hunt-Alpine Club LLC, a restaurant located in Portland, Maine [(*Portland Hunt-Alpine Club*)]." *Id.* Prime

Steakhouse also points out that, though the "Defendants suggest that Prime Steakhouse's action bears a relationship to a now-dismissed action previously before Judge Cecilia Altonaga" in the Southern District of Florida, their transfer motion "actually requests transfer to Judge Rodney Smith . . . who is presiding over an indirect purchaser action brought by Wood Mountain Fish, LLC" that was filed after Prime Steakhouse's action in this Court. *Id.* at 1-2. Prime Steakhouse then presents its arguments.

1. **Defendants' Accusations of Forum Shopping Assume Prime Steakhouse's Motivations**

Prime Steakhouse contends that the Defendants' allegations of forum shopping are conclusory and "fail to rule out less nefarious motivations for Prime Steakhouse's District of Maine filing, such as the geographical proximity of Prime Steakhouse to Maine versus Florida or that Prime Steakhouse may wish to retain the opportunity to have a trial that is separate from" other class action cases. *Id.* at 2-3. Additionally, the "Defendants fail to point to anything concrete about the District of Maine, legal or otherwise, that benefits Prime Steakhouse," and "Prime Steakhouse is suing the Defendants in a district that contains a large defendant's prominent domestic subsidiary, Mowi Ducktrap, LLC f/k/a Ducktrap River of Maine LLC." *Id.* at 3.

2. **Relevant Legal Authority Does Not Support Transfer**

Prime Steakhouse asserts that motions for transfer "should be granted only in those 'rare cases' where the party [seeking transfer] has shown that a transfer is necessary 'to avoid serious unfairness to it.'" *Id.* at 3-4 (quoting *Reiser (UK) Ltd. v. Bryant*, 494 F. Supp. 2d 28, 34 (D. Mass. 2007)). Prime Steakhouse then argues that

"[t]he private interest factors tend to support denying transfer and, at most, are a wash when viewed as a whole." *Id.* at 4. Prime Steakhouse says that its choice of forum is entitled to weight because of the "Maine presence of Mowi Ducktrap, LLC and plaintiff Hunt-Alpine Club" in a different action now before the Court. *Id.* at 5. In Prime Steakhouse's view, where the claim arose is neutral with respect to itself, but "militates in favor of keeping the two actions in Maine when the Hunt-Alpine Club action is taken into account." *Id.* With regard to the convenience of the parties, Prime Steakhouse says that it "is willing to coordinate discovery in the pending lawsuits relating to farm-raised salmon price-fixing, so transfer of the Prime Steakhouse action is not required in order to avoid duplicative depositions and discovery." *Id.* at 6. Furthermore, Prime Steakhouse asserts, transfer to Judge Smith would avoid the possibility of repeat proceedings only with regard to the indirect purchaser actions, which have not proceeded on the same schedule as the direct purchaser actions in the Southern District of Florida thus far. *Id.* Lastly, Prime Steakhouse agrees with the Defendants that the location of evidence factor is neutral. *Id.*

Prime Steakhouse goes on to address the public interest factors, arguing that they also do not support transfer. It contends that the first-filed rule suggests that it should not be consolidated with the *Wood Mountain* action in the Southern District of Florida and that Prime Steakhouse "seeks to certify a class that appears to be significantly narrower in scope than the putative class set forth in" that action. *Id.* at 6-7. In Prime Steakhouse's view, "a narrower class has a better chance of being

certified than does a much broader one," and consolidation with the *Wood Mountain* action would lead to Prime Steakhouse becoming "part of a case that is being led by a fundamentally different type of class representative"—namely, a wholesaler as opposed to a restaurant. *Id.* at 7-8. With regard to judicial economy, Prime Steakhouse points out that the *Wood Mountain* indirect purchaser action and the direct purchaser action in Florida (*Farm-Raised Salmon*) are not progressing in tandem; rather, "the parties in the [indirect purchaser] action will agree on a briefing schedule only after the filing of an amended complaint" which has not yet occurred, in comparison to the direct purchaser action in which a schedule "has been agreed upon with regard to jurisdictional discovery and personal jurisdiction motion to dismiss briefing." *Id.* at 8. Prime Steakhouse also asserts that the Court has an interest in "passing judgment on a Maine business, such as Mowi Ducktrap, LLC," and the "Defendants have made no showing of the existence of a differential between the [workloads of the] District of Maine and Southern District of Florida." *Id.* at 8-9.

Lastly, Prime Steakhouse argues that a multi-district litigation (MDL) petition would more appropriately address the Defendants' concerns than transfer. *Id.* at 9. It "requests that Defendants clarify whether they will file an MDL petition after the Court issues its opinion on the motion to transfer currently before it," because if the Court denies a transfer motion, an MDL petition would constitute a de facto interlocutory appeal, and if the Court grants the transfer motion, an MDL petition would render the transfer superfluous. *Id.* (internal footnote omitted). Additionally, in Prime Steakhouse's view, consolidation via the MDL process would preserve Prime

Steakhouse's choice of forum. *Id.* at 9-10. Lastly, Prime Steakhouse argues that transfer is inequitable because it would "not necessarily curtail the multi-forum nature of" this litigation and would allow Defendants to possibly "tak[e] advantage of the defendant-friendly aspects of multi-forum litigation" by engaging in a reverse-auction[2] to ensure a favorable settlement. *Id.* at 10.

## C.    Defendants' Reply

The Defendants argue Prime Steakhouse "offers no coherent explanation for its transparent efforts to forum shop, and opposes transfer because it wants to have a 'separate' trial in this district, even as the other salmon-related antitrust cases proceed in Florida." *Defs.' Reply* at 1 (quoting *Pl.'s Resp.* at 3). They contend that "[n]one of [Prime Steakhouse]'s arguments overcome the detailed showing made by Defendants of the obvious private and public benefits of centralizing all of the salmon-related cases in one forum," and state that the Judicial Panel on Multidistrict Litigation (JPML) has "encourage[d] parties to initiate MDL proceedings only when transfer under Section 1404(a) is unavailable . . .." *Id.* at 1-2.

In the Defendants' view, Prime Steakhouse has not offered a sufficient response to their arguments that it has "engaged in forum shopping and [that] transfer will avoid overlapping class actions in different jurisdictions, preserving resources and preventing inconsistent judgments." *Id.* at 2. They state that Prime Steakhouse's counsel has not explained why they changed their choice of forum so

---

[2]    A "reverse auction," in the class action context, occurs when multiple class actions are filed on behalf of the same class and counsel for the defendant or defendants is therefore able to pit class counsel in the different actions against one another to achieve a settlement at a discount. *See* Rhonda Wasserman, *Dueling Class Actions*, 80 B.U.L. REV. 461, 470-74 (2000).

soon after the case they brought in the Southern District of Florida was transferred to the judge overseeing the *Farm-Raised Salmon* direct purchaser litigation. *Id.* They view Prime Steakhouse's proximity explanation of its choice of Maine as "facially unbelievable" because there are "over twenty-five US district courts that are closer to it." *Id.* Additionally, the Defendants acknowledge Prime Steakhouse's argument that nothing about the District of Maine benefits it but say that "forum shopping motivated by a desire to avoid a court is no less pernicious than forum shopping designed to secure a beneficial forum." *Id.* at 2-3 (citing *Levy v. Walsh*, No. 12-CV-2056 (DLI)(VMS), 2013 WL 1149152, at *5 (E.D.N.Y. Mar. 19, 2013)). They argue that even if Prime Steakhouse's action is not consolidated with the *Wood Mountain* indirect purchaser action in Florida, it should still be transferred because "judicial economy is served by placing related claims before the same court." *Id.* at 3 (quoting *Talent Tree Crystal, Inc. v. DRG, Inc.*, No. 1:04-CV-875, 2005 WL 3312554, at *5 (W.D. Mich. Dec. 7, 2005)). Furthermore, the Defendants contend, with regard to the fact that Mowi Ducktrap, LLC is located in Maine, that "the location of one Defendant in a fifteen-Defendant case is not nearly enough to negate the evidence here of improper forum shopping." *Id.* at 3-4. The Defendants also argue that "proper application of the 'first-filed' rule supports transfer, because the 'first-filed' indirect purchaser suit" was the one previously filed in Florida by Prime Steakhouse's counsel. *Id.* at 4.

With regard to judicial economy, the Defendants argue that "[o]verlapping antitrust class actions in different districts result in duplicative proceedings at every

stage of the case, with every significant decision creating the possibility of conflicting results that affect absent class members and prejudice Defendants," which risks are "even more pronounced given that [Prime Steakhouse] is represented by different counsel than the plaintiffs in the Florida cases." *Id.* at 4-5. Additionally, the Defendants state, the fact that the indirect purchaser plaintiffs in Florida have not filed an amended complaint "is by design," and will occur "after motions to dismiss have been resolved in the direct purchaser action to avoid duplicative motion practice." *Id.* at 5.

The Defendants next assert that no "significant factor . . . supports keeping this case in this forum." *Id.* at 5. They state that Prime Steakhouse's choice of forum "is entitled to little weight in a proposed nationwide class action in which many members of the proposed class will inevitably reside outside of the forum," *id.* at 5 (citing *Wiley v. Gerber Prods. Co.*, 667 F. Supp. 2d 171, 174 (D. Mass. 2009)), and that the same is true for the factor of where the claim arose. *Id.* at 5-6. In the Defendants' view, Prime Steakhouse's forum choice is also entitled to little weight "because [Prime Steakhouse] chose this forum for tactical reasons." *Id.* at 6. The Defendants do not believe that the filing of the Portland Hunt-Alpine Club complaint changes this analysis because it was "signed by the same lawyers" who represent Prime Steakhouse and because it was not filed until after the Defendants informed Prime Steakhouse they intended to file a transfer motion. *Id.* They also argue that Prime Steakhouse's willingness to coordinate discovery with the Florida actions if transfer

is denied is "unpersuasive because coordinating discovery across circuits is vastly more difficult than coordinating discovery within the same district." *Id.*

Furthermore, the Defendants argue that transfer is preferable to an MDL petition and that Prime Steakhouse's concern about a reverse auction settlement is "unfounded, would be present in an MDL as well, and is adequately addressed by the requirement that class-action settlements be carefully reviewed and approved by a court." *Id.* at 6-7. Finally, the Defendants contend that Prime Steakhouse's concern about the risk of piecemeal transfer absent an MDL "ignores that [Prime Steakhouse]'s counsel have filed the only two such cases to date." *Id.* at 7.

## D. The Magistrate Judge's Recommended Decision

The Magistrate Judge first lays out the timeline of filings related to the actions at issue in the District of Maine and the Southern District of Florida. *RecDec* at 4-8. The Magistrate Judge then notes that "[t]he parties do not dispute that [Prime Steakhouse] could have filed this case in the Southern District of Florida," and therefore the Defendants "satisfy the threshold requirement of Section 1404(a) that the transferee forum be one in which the plaintiff had the right to bring the action at issue." *Id.* at 8. The Magistrate Judge then addresses the public and private factors related to transfer, before turning to Prime Steakhouse's argument regarding the preferability of an MDL proceeding.

### 1. Public Factors

The Magistrate Judge finds that "analysis of the public interests at stake favors the grant of [the Defendants'] motion, in particular, the order in which this

court obtained jurisdiction and the possibility of consolidation in the Southern District of Florida." *Id.* The Magistrate Judge rejects the argument that "the instant action is the first-filed indirect purchaser suit," agreeing with the Defendants that treating Prime Steakhouse's suit as first-filed would increase risks of wasted resources, conflicting judgments, and imprudent interference between different courts. *Id.* at 9. The Magistrate Judge notes that the *Farm-Raised Salmon* direct purchaser suit, which was filed earlier than the instant action, "remains pending in the Southern District of Florida," as does the *Wood Mountain* indirect purchaser suit. *Id.* The Magistrate Judge cites *Bath Iron Works Corp. v. Congoleum Corp.*, No. 2:18-cv-00405-GZS, 2019 WL 2110499, at *3 (D. Me. May 14, 2019) for the propositions that "concurrent federal cases need not be exactly the same to generate a preference for the first-filed action" and that the analysis focuses on whether permitting concurrent cases to continue "raises concerns about the ills of duplicative litigation." *RecDec* at 9. In the Magistrate Judge's view, the direct purchaser suit "require[s] the resolution of the same underlying factual issue [as this suit]: whether the defendants coordinated the price of farm-raised salmon." *Id.* at 10. Furthermore, even if this action could not be consolidated with the *Farm-Raised Salmon* direct purchaser action in Florida, the Magistrate Judge can "perceive no reason why it could not be consolidated with" the *Wood Mountain* indirect purchaser action in Florida. *Id.*

The Magistrate Judge also rejects Prime Steakhouse's argument that it seeks to certify a narrower class than the plaintiff in the indirect purchaser action in Florida, pointing out that Prime Steakhouse "cites no authority for the proposition

17

that such class certification issues weigh against a transfer." *Id.* at 11. Rather, in the Magistrate Judge's view, "the pendency of both direct and indirect purchaser suits in one court seemingly would facilitate the resolution of such class certification issues." *Id.* Additionally, the Magistrate Judge states that "[t]he relatively minimal effort expended by this court and the parties in this case, combined with the Southern District of Florida's greater familiarity with the parties, facts, and claims, supports transfer of this case to the Southern District of Florida." *Id.* at 12.

### 2. Private Factors

The Magistrate Judge observes that Prime Steakhouse's "decision to file in Maine indeed appears to have been a tactical one," and further states that, tactics aside, Prime Steakhouse's "lack of relationship with Maine, and the fact that it purports to act on behalf of a nationwide class, in themselves undermine the strong presumption in favor of preserving its choice of this forum." *Id.* at 13. Additionally, the Magistrate Judge points out that the fact that "a Maine plaintiff subsequently chose to bring a nearly identical suit in this forum has no bearing on whether the defendants have overcome the presumption in favor of this plaintiff's choice of forum." *Id.*

With regard to the convenience of the parties and witnesses, the Magistrate Judge finds Prime Steakhouse's "offer to coordinate discovery in the related actions" unpersuasive and determines that this factor weighs in favor of transfer. *Id.* at 14. The Magistrate Judge finds that the availability of documents and other evidence is a neutral factor. *Id.* at 14-15.

### 3.    Judicial Panel on Multidistrict Litigation

The Magistrate Judge rejects Prime Steakhouse's argument that transfer pursuant to the MDL statute would be the best way to proceed, agreeing with the Defendants that the MDL procedure is inappropriate as a first resort. *Id.* at 15-16.

### E.    Prime Steakhouse's Objection

Prime Steakhouse makes four objections to the Magistrate Judge's Recommended Decision. *Pl.'s Obj.* at 1. First, Prime Steakhouse argues that the Magistrate Judge "erred by failing to consider the local interest in deciding local controversies at home as a public factor that weighs against transfer." *Id.*. Prime Steakhouse states that the Magistrate Judge's "consideration of the public interest factors to be weighed only looks at judicial efficiency." *Id.* at 2 (internal footnote omitted). Prime Steakhouse asserts that "the local interests in adjudicating this dispute in Maine" include "the status of defendant Mowi Ducktrap, LLC as a Maine entity," the fact that a plaintiff in a separate suit brought in the District of Maine is located in Maine, and the fact that that other plaintiff "seeks to assert claims under a Maine statute . . .." *Id.*

Second, Prime Steakhouse contends that the Magistrate Judge "erred by not applying the first-filed rule correctly." *Id.* Prime Steakhouse states that the "primary rationale set forth for transferring the instant *Prime Steakhouse* action to Florida is that the Florida *Wood Mountain* action is supposedly more advanced," but in fact "the Wood Mountain action is actually on hold" pending resolution of a jurisdictional motion to dismiss in the direct purchaser action pending in Florida. *Id.* at 2-3.

"Furthermore, Plaintiff in the instant *Prime Steakhouse* action has filed a motion for appointment of interim lead counsel . . . and a motion for alternative service is currently before the Court and has been fully briefed." *Id.* at 3 (referring to filings in *Portland Hunt-Alpine Club*).

Third, Prime Steakhouse argues the Magistrate Judge "erred by disregarding the presumption in favor of [Prime Steakhouse]'s choice of forum." *Id.* Prime Steakhouse contends that the Magistrate Judge's reasoning for disregarding the presumption in favor of its choice of Maine as the forum for this lawsuit was incorrect because "plaintiff Portland Hunt-Alpine Club is a Maine entity that is located in Maine" and the complaints in this action and *Portland Hunt-Alpine Club* both "assert damages claims under a variety of state laws, including a Maine statute." *Id.* at 3-4. Additionally, "Portland Hunt-Alpine Club may seek to represent a class or subclass of Maine purchasers of farm-raised salmon products." *Id.* at 4. Prime Steakhouse views the Magistrate Judge's Recommended Decision as implicitly stating that "the presumption in favor of a plaintiff's choice of forum is worth less consideration merely because that plaintiff has chosen to invoke the Rule 23 class action mechanism," and argues that "this proposition is without legal basis or any supporting authority." *Id.*

Fourth, Prime Steakhouse contends that the Magistrate Judge "erred by disregarding the class certification issues that transfer presents," stating that the Magistrate Judge's reasoning that the pending direct and indirect purchaser suits in Florida seem likely to facilitate resolution of class certification issues "incorrectly substitutes an efficiency analysis for a discussion about the potential impairment of

[Prime Steakhouse]'s individual rights to bring class actions under Rule 23." *Id.* Prime Steakhouse asserts that "[i]f transfer is effected, [Prime Steakhouse]'s ability to prosecute a class action under Rule 23 will be impaired" because it seeks to represent a class that is both different and narrower than the class the indirect purchaser plaintiff seeks to represent in Florida. *Id.* at 5. Prime Steakhouse views "a transfer that significantly decreases [its] ability to invoke a procedural mechanism that is critical to the prosecution of its case . . . as the functional equivalent of a dismissal." *Id.*

## F.    Defendants' Response

First, the Defendants argue that the Recommended Decision does not fail to weigh the local interest in this litigation against judicial efficiency, but rather concludes that any local interest is outweighed by other factors that favor transfer. *Defs.' Resp.* at 5-6. Additionally, the Defendants reiterate their argument that "*all* jurisdictions have an interest in enforcing the antitrust laws, so this Court's local interest is no more significant than that of the Southern District of Florida," particularly in light of the fact that Prime Steakhouse's Complaint invokes "the laws of over two dozen different states, including Florida . . .." *Id.* at 6 (emphasis in original). The Defendants argue "Mowi Ducktrap's geographical location carries no weight in the transfer analysis" because "the other fourteen Defendants are either located in other states . . . or abroad . . .." *Id.* Additionally, the Defendants argue that Portland Hunt-Alpine Club's decision to file a lawsuit in Maine was tactical and should not be entitled to weight. *Id.* at 6-7.

Second, the Defendants state that "the Recommended Decision correctly concluded that [Prime Steakhouse]'s forum choice should be given little weight both because [Prime Steakhouse] engaged in forum shopping and because [it] seeks to represent a nationwide class." *Id.* at 7. They state that "[t]his Court and others have recognized that a plaintiff's choice of forum is entitled to less deference when the plaintiff brings suit on behalf of a class that allegedly suffered harm throughout the United States" and argue that this is particularly true because Prime Steakhouse has brought nationwide injunctive claims under federal antitrust laws "as well as claims under the laws of many other states . . .." *Id.* at 8.

Third, the Defendants assert that the Recommended Decision was correct in finding that the first-filed rule "is inapplicable because Prime Steakhouse was not the first plaintiff to file a salmon-related antitrust class action, or even the first plaintiff to file a salmon-related indirect purchaser case." *Id.* The Defendants also represent that the indirect purchaser action in Florida is not on hold, as asserted by Prime Steakhouse, but rather is making substantial progress. *Id.* at 9.

Fourth, Defendants argue that "the Recommended Decision correctly concluded that grouping all of the salmon-related antitrust suits in the same District will facilitate the fair and orderly resolution of any [class certification] issues." *Id.* at 9-10. The Defendants believe that "[i]f this case is transferred, [Prime Steakhouse]'s suit can be consolidated with *Wood Mountain*, making it more likely that [Prime Steakhouse] will have an opportunity to voice its purported concerns prior to any class certification proceedings." *Id.* at 10. Additionally, the Defendants note that

Prime Steakhouse "still fails to bring any relevant authority to the Court's attention to support its argument that class certification issues weigh against a transfer." *Id.*

## III.  LEGAL STANDARD

"When . . . a magistrate judge passes upon a dispositive motion, he or she may only issue a recommended decision, and if there is a timely objection, the district judge must engage in de novo review." *PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 14 (1st Cir. 2010) (citing FED. R. CIV. P. 72(b)).  The Magistrate Judge treated this motion to transfer as dispositive "[i]n an abundance of caution," *RecDec* at 1 n.1, and though the Defendants expressed what could be termed disappointment with this approach, *Defs.' Resp.*at 5 and n.2, neither party objected.  The Court concludes that the parties have waived objection to treating the Magistrate Judge's Recommended Decision as dispositive, and the Court therefore applies de novo review.[3]

Under 28 U.S.C. § 1404(a), "a district court may transfer a case to any other district or division where the case might have been originally brought, or to which the parties have consented, in the interest of justice or for the convenience of the parties and witnesses." *Bluetarp Fin., Inc. v. Matrix Constr. Co.*, 709 F.3d 72, 83 n.11 (1st Cir. 2013).  Section 1404(a) "is intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Astro-Med, Inc. v. Nihon Kohden Am., Inc.*, 591 F.3d 1, 12 (1st Cir. 2009) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S.

---

[3]  In previous cases where parties have not objected to a magistrate judge's treatment of a motion to transfer venue as dispositive, the Court has proceeded with de novo review. *See, e.g.*, *United States v. Razo*, No. 1:11-cr-00184-JAW, 2012 WL 5874667, at *6 (D. Me. Nov. 20, 2012); *Lulu, Inc. v. Chesapeake Boats, Inc.*, Civil No. 09-37-B-W, 2009 WL 2150968 (D. Me. July 13, 2009).

22, 29 (1988)). "Not only does the burden of proof rest with the party seeking to transfer; there is a 'strong presumption in favor of the plaintiff's choice of forum.'" *Id.* at 13 (quoting *Coady v. Ashcraft & Gerel*, 223 F.3d 1, 11 (1st Cir. 2000)).

Private factors considered by courts exercising discretion under section 1404(a) "include 'the statutory considerations of convenience of the parties and witnesses, but also often include the plaintiff's forum preference, where the claim arose, and the relative ease of access to sources of proof.'" *Johnson v. VCG Holding Corp.*, 767 F. Supp. 2d 208, 212 (D. Me. 2011) (quoting 15 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE & PROCEDURE § 3847 (2007 ed.) (hereafter WRIGHT & MILLER)). "Public factors 'encompass the statutory consideration of the interest of justice, focus on judicial economy and often include the district court's familiarity with the governing law, the local interest in deciding local controversies at home, and the relative congestion of the courts.'" *Id.* (quoting WRIGHT & MILLER § 3847).

## IV. DISCUSSION

The Court reviewed the record along with the Magistrate Judge's well-reasoned and detailed Recommended Decision and concurs with the Magistrate Judge. However, as Prime Steakhouse lodged four objections to the Recommended Decision, the Court addresses each.[4]

---

[4] Prime Steakhouse did not raise the "reverse auction" issue in its objections to the Magistrate Judge's Recommended Decision. Nevertheless, for sake of completeness, the Court does not view the argument as well-supported. It is unclear why Prime Steakhouse is more concerned about a reverse-auction settlement process if its action is transferred to Florida than if it stays in Maine. *See Pl.'s Resp.* at 10. To the extent a reverse auction could apply to this case, the current posture of this case, with one indirect purchaser action in Maine and another in Florida, would seem to make a reverse-auction more likely. Moreover, there is nothing in this record that confirms that a reverse auction

24

## A.     Local Interest in Deciding Local Controversies

Prime Steakhouse asserts that the Magistrate Judge "erred by failing to consider the local interest in deciding local controversies at home as a public factor that weighs against transfer." *Pl.'s Obj.* at 1.  Preliminarily, the Court is not convinced, given the wide discretion possessed by courts faced with section 1404(a) motions, that failure to explicitly consider this factor—or any other factor, for that matter—in writing would of itself be error. *See Astro-Med, Inc*, 591 F.3d at 12.  On a more fundamental level, even if the Magistrate Judge did not consider this factor, it is not clear that Maine does have a local interest in this controversy.  The fact that a single defendant hails from Maine, in contrast to the fourteen that do not, does not persuade the Court that there is anything unique about Maine that counsels against transfer.

Prime Steakhouse also states in support of this point that "one of the plaintiffs bringing suit, Portland Hunt-Alpine Club, is located in Maine." *Pl.'s Obj.* at 2.  But Portland Hunt-Alpine Club is not a plaintiff in this suit, and this line of argument puts Prime Steakhouse in the position of simultaneously arguing the Court should discount the indirect purchaser suit filed and withdrawn by Prime Steakhouse's counsel in Florida, *Pl.'s Resp.* at 2-3 ("Defendants' only apparent support for this proposition is that Prime Steakhouse's counsel filed a now-withdrawn lawsuit in Florida against the same defendants on behalf of a different plaintiff"), and should consider the Portland Hunt & Alpine Complaint also filed by counsel for Prime

---

strategy has been employed in this case and therefore the argument remains a theory only— untethered to the facts in this case.

Steakhouse. The Court does not view the presence in this district of a different suit filed by a different plaintiff as providing significant support for the proposition that there is a local Maine interest in deciding *this* suit filed by *this* plaintiff. Consistent with the Magistrate Judge's Recommended Decision, the Court views this factor as neutral.

### B.      The First-Filed Rule

The First Circuit adopted the "first-filed" rule when multiple cases are pending in different jurisdictions. "What that rule basically says is that if two district courts have jurisdiction over the same controversy, then the court with the 'first-filed' action should typically get first dibs on deciding the case." *In re Atlas IT Exp. Corp.*, 761 F.3d 177, 180 (1st Cir. 2014) (citing *Codex Corp. v. Milgo Elec. Corp.*, 553 F.2d 735, 737 (1st Cir. 1977)). Prime Steakhouse objects that the Magistrate Judge did not apply the first-filed rule correctly for two reasons: first, "the instant *Prime Steakhouse* action was filed prior to the Florida *Wood Mountain* action with which the Order would consolidate the *Prime Steakhouse* action in Florida"; and second, "[t]he primary rationale set forth for transferring the instant *Prime Steakhouse* action to Florida is that the Florida *Wood Mountain* action is supposedly more advanced . . .." *Pl.'s Obj.* at 2-3.

Prime Steakhouse is correct that the Magistrate Judge acknowledged that this action was filed prior to *Wood Mountain*. *See RecDec* at 9. However, the Magistrate Judge's resolution of the first-filed factor rested primarily on the fact that *Farm-Raised Salmon* was filed prior to this case. *Id.* at 9-10. Prime Steakhouse does not

address this point in its objection.  The Court views the Magistrate Judge as correct in his conclusion that "[t]here is a significant overlap . . . between *Farm-Raised Salmon* and this suit," each of which will "require the resolution of the same underlying factual issue: whether the defendants coordinated the price of farm-raised salmon." *Id.* at 10.  "[C]oncurrent federal cases need not be exactly the same to generate a preference for the first-filed action," *Bath Iron Works Corp.*, 2019 WL 2110499, at *3, and the Court agrees with the Magistrate Judge that the overlap between this case and *Farm-Raised Salmon* counsels against treating this suit as first-filed.

### C.      Presumption in Favor of Prime Steakhouse's Choice of Forum

Prime Steakhouse argues that "there are inherently local aspects to the claims brought against the defendants," as both this action and the Portland Hunt-Alpine action "assert damage claims under a variety of state laws, including a Maine statute." *Pl.'s Obj.* at 3-4.  The Court reviewed both these complaints and notes that the Maine statute referenced by Prime Steakhouse is Maine's antitrust statute, 10 M.R.S. § 1101, and it is included among a list of twenty-four similar state antitrust statutes.  *See Compl.* ¶¶ 114-37; *Compl.* ¶¶ 196-219, *Portland Hunt-Alpine Club, LLC v. Mowi ASA*, No. 2:19-cv-00446-JAW, ECF No. 1.  The Court does not regard the fact that this claim is being brought—in the context of complaints that allege twenty-three other such claims—as persuasive.

### D.      Class Certification Issues

Prime Steakhouse asserts that "[i]f transfer is effected, [Prime Steakhouse]'s ability to prosecute a class action under Rule 23 will be impaired" because it will need "to undo or modify the lead counsel appointment of a firm representing a putative class representative that is of a fundamentally different type than [Prime Steakhouse] and that seeks to represent a much broader class than what [Prime Steakhouse] seeks to represent." *Pl.'s Obj.* at 5. But as the Magistrate Judge wrote, Prime Steakhouse "cites no authority for the proposition that such class certification issues weigh against a transfer," and it did not correct that deficiency in its objection. *RecDec* at 11. Additionally, the Court agrees with the Magistrate Judge that, once transfer is effected, Prime Steakhouse may raise its objections to class certification, and the resolution of these issues will likely be facilitated by "the pendency of both direct and indirect purchaser suits in one court . . .." *Id.*

## V. CONCLUSION

The Court reviewed and considered the Magistrate Judge's Recommended Decision, together with the entire record; the Court has made a de novo determination of all matters adjudicated by the Magistrate Judge's Recommended Decision; and the Court concurs with the recommendations of the United States Magistrate Judge for the reasons set forth in his Recommended Decision and the additional reasons laid out in this Order. The Court determines that no further proceeding is necessary.

    1.    It is therefore <u>ORDERED</u> that the Recommended Decision of the Magistrate Judge (ECF No. 55) be and hereby is <u>AFFIRMED</u>.

2.    It is further <u>ORDERED</u> that the Defendants' Motion to Transfer Venue Under 28 U.S.C. § 1404(a) (ECF No. 29) is <u>GRANTED</u>.[5]

SO ORDERED.

<u>/s/ John A. Woodcock, Jr.</u>
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 25th day of March, 2020

---

[5]    In light of the Court's decision to grant Defendants' Motion to Transfer, the Court dismisses as moot the remaining pending motions—the Motion for Approval of Plan for Alternative Service of Process on Norwegian Defs. (ECF No. 14), Motion to Extend Time (ECF No. 24), and Motion to Stay (ECF No. 26)—and this Court's Order to Show Cause (ECF No. 15).